**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | | |
|---|---|---|
| TRAVIS HALL,<br>on Behalf of Himself and All<br>Others Similarly-Situated,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED COAL COMPANY LLC,<br>WELLMORE COAL COMPANY, LLC,<br>and WELLMORE ENERGY COMPANY, LLC,<br><br>*Defendants.* | ) | **CLASS ACTION AND<br>AND COLLECTIVE ACTION**<br><br>CASE NO. ________________<br><br>**JURY DEMANDED** |

**CLASS ACTION AND COLLECTIVE ACTION COMPLAINT (AMENDED)[1]**

Comes Plaintiff Travis Hall ("Plaintiff"), by and through counsel, and, for his Class Action and Collective Complaint against Defendants United Coal Company LLC, Wellmore Energy Company, LLC, and Wellmore Coal Company, LLC, states as follows:

## I. Summary of the Action

1. This action seeks unpaid overtime compensation, for Plaintiff and a class and collective composed of workers who, in one or more workweeks paid from September 29, 2022 to the present, worked more than forty hours but were deprived of overtime compensation based on Defendants' classification of the employee as exempt under an exemption requiring the payment of the employee on a salary basis, including the executive exemption.

[1] Plaintiff and others joined this case after the filing of the initial complaint as plaintiffs pursuant to 29 U.S.C. § 216(b). This complaint is filed together with the initial plaintiff for the purpose of substituting Plaintiff as the named plaintiff in the place of the initial named plaintiff (Defendants contend the initial named plaintiff is subject to an arbitration agreement, and the initial plaintiff intends to file a stipulation of dismissal of his claims in this action after the filing of this Amended Complaint). This Amended Complaint is filed as of right under Federal Rule of Civil Procedure 15, it having been filed prior to 21 days after the service of the initial Complaint.

2. Defendants violated the Fair Labor Standards Act ("FLSA") and Kentucky Wages and Hours Act ("KWHA") by failing to pay overtime compensation to Plaintiff and the similarly-situated employees because Defendants did not pay Plaintiff and the similarly-situated employees on a "salary basis" as required by law; instead, even when they were ready, willing and able to work, the pay of Plaintiff and the similarly-situated employees was subject to reduction in the event the coal mine at which Plaintiff and the similarly-situated employees worked was shut down by governmental authorities for safety violations, or in the event Defendant decided to shut down the mine for its own business purposes.

3. In other words, Plaintiff and the similarly-situated employees were not guaranteed that they would be paid a full salary in weeks in which they performed some work but were told by Defendants (through no fault or decision of the employees) to not work for part of the week; instead, Plaintiff and the similarly-situated employees would, under Defendant's compensation system for "salaried" employees, only receive partial payment of their "salary" during these weeks.

4. Where the employer's compensation system does not guarantee payment of the "salary" to the employee in **all** weeks in which the worker performs work and is ready, willing and able to perform work, then the employee is not paid on a "salary basis" in **any** workweek, including in workweeks where the employee is paid the normal "salary" amount.

5. Plaintiff and the similarly-situated employees worked many, many hours of overtime work, but were not paid overtime compensation for the work.

6. Accordingly, this action seeks relief with respect to all overtime compensation which should have been, but was not, paid from September 29, 2022 until the filing of this Complaint. Further, to the extent Defendants continue to violate federal and/or state law by depriving workers of wages in any of the ways complained of herein during the pendency of this

action, this action seeks relief with respect to all such violations through the time of the trial of this action.

## II. Jurisdiction and Venue

7. This Court has jurisdiction over the claims of Plaintiff and those similarly situated pursuant to 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 216(b).

8. This Court has and should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims under the Kentucky Wages and Hours Act ("KWHA") and Virginia Overtime Wage Act ("VOWA") because they are so related to Plaintiff's claims under the FLSA that they form part of the same case or controversy and arise from the same set of operative facts as Plaintiff's claims under the FLSA.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants operate mines that are partly located within the District of this Court (the mines straddle the Kentucky-Virginia state border) and employed Plaintiff and the similarly-situated employees in those mines.

## PARTIES

10. Plaintiff is a resident and citizen of Kentucky. Plaintiff's consent pursuant to 29 U.S.C. 216(b) to bring this action has been filed with the Court as DN 4-3.

11. Defendant Wellmore Energy Company, LLC is a Virginia for-profit limited liability company which has a principal place of business at 2112 N. Roan Street, Suite 500, Johnson City, TN 37601-2519, and may be served by service of process on its registered agent, Business Filings Incorporated, at 4701 Cox Road, Suite 285, Glen Allen, VA 23060.

12. Defendant Wellmore Coal Company, LLC is a Virginia for-profit limited liability company which has a principal place of business at 2112 N. Roan Street, Suite 500, Johnson City,

TN 37601-2519, and may be served by service of process on its registered agent, Business Filings Incorporated, at 4701 Cox Road, Suite 285, Glen Allen, VA 23060.

13. Defendant United Coal Company LLC, is a Virginia for-profit limited liability company which has a principal place of business at 2112 N. Roan Street, Suite 500, Johnson City, TN 37601-2519, and may be served by service of process on its registered agent, Paul Konstanty, at 2112 N. Roan Street, Suite 500, Johnson City, TN 37601-2519.

14. At all times relevant to this Complaint, each Defendant has had at least two employees.

15. Each Defendant's annual sales have, at all relevant times to this Complaint, exceeded $500,000.00.

16. Each Defendant is an enterprise engaged in commerce or in the production of goods for commerce, as defined in 29 U.S.C. § 203.

**FACTUAL ALLEGATIONS**

17. Defendants employed, within the three years preceding the filing of this action, Plaintiff and the similarly-situated employees in connection with Defendants' coal mines located along the Kentucky/Virginia border in the three years preceding the filing of this action.

18. Defendants classified Plaintiff and the similarly-situated employees as exempt under an exemption to the FLSA requiring the employer to pay the employee on a "salary basis."

19. For example, upon information and belief, Defendants classified Plaintiff as exempt under the "executive exemption" to the FLSA codified 29 U.S.C. § 213(a)(1), which provides that an employer need not pay overtime compensation as required by the FLSA to "any employee employed in a bona fide executive… capacity."

20. 29 U.S.C. § 213(a)(1) further provides that the term "employed in a bona fide executive… capacity" is to be "defined and delimited from time to time by regulations of the Secretary" of the Department of Labor.

21. At all times, the relevant regulation has been 29 C.F.R. § 541.100, which defines an "employee employed in a bona fide executive capacity" as an employee meeting each and every one of four requirements.

22. The first of those requirements is that the "employee employed in a bona fide executive capacity" be "[c]ompensated on a salary basis…."

23. "[S]alary basis" is, in turn, defined in 29 C.F.R. § 541.602. See 29 C.F.R. § 541.100(b).

24. Specifically, under 29 C.F.R. § 541.602(a), "[a]n employee will be considered to be paid on a 'salary basis' within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."

25. 29 C.F.R. § 541.602(a)(1) further provides that "an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked."

26. 29 C.F.R. § 541.602(a)(2) specifies that "[a]n employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available."

27. Defendants' classification of Plaintiff and the similarly-situated employees as exempt[2] was incorrect.

28. Defendants' pay policies were that, if absences occurred for any reason, deductions would be made from the employee's predetermined compensation.

29. Stated another way, Defendants' pay policies were that, if absences occurred because they were occasioned by Defendants or by the operating requirements of the business, deductions would be made from the employee's predetermined compensation.

30. For instance, in July, 2023, Defendant conducted a layoff of certain of its employees.

31. On Monday, July 10, 2023, Plaintiff and numerous other employees, both "salaried" and hourly, reported to work, expecting to work the entire week.

32. After arriving, they attended a mandatory meeting, which constituted compensable work.

33. Upon information and belief, for each "salaried" employee who attended this meeting, Defendants credited the employee on its time records with having worked two hours on July 10, 2023.

34. During the meeting on July 10, 2023, Defendants told Plaintiff and the other employees that the mine would be shut down for the week and that Plaintiff and the other employees would not work for the remainder of the week.

---

[2] Plaintiff notes that the burden of asserting, pleading, and proving the applicability of exemptions is on the employer, and not on the employee. Therefore, Plaintiff reserves the right to respond to any assertion, pleading or proof by the employer, including with facts not included in this Complaint. However, Plaintiff sets out in this Complaint facts relating to the nonapplicability of the executive exemption in order to provide an overabundance of notice to Defendants of Plaintiff's position. In doing so, Plaintiff does not waive the right to require that the burden relating to asserting, pleading and proving each element of an asserted exemption remain with Defendants as the employer.

35. Also during this meeting, Defendants told Plaintiff and the other "salaried" employees that they would only receive a partial "salary" for that week and that, unless they had available vacation time and elected to use it, their paychecks would be less than usual.

36. The initial plaintiff named in the Initial Complaint elected to use accrued vacation time so that, together with his reduced salary, he received his normal paycheck amount.

37. The paystub for this pay period of the initial plaintiff named in the Initial Complaint is attached to the Initial Complaint in this matter as Exhibit 2 (DN 1-3).

38. However, other employees did not have and/or did not elect to use accrued vacation time, and, therefore, as a result of Defendants' decision to close the mine and not pay employees for the work, received lower-than-normal paychecks.

39. For example, Jordan Moore[3] was a "salaried" employee of Defendants at the time of the shutdown during the week of July 10, 2023 (that is, he would generally receive the same amount every week in which he would work the full week, and would not receive overtime compensation).

40. Instead of receiving his normal gross (pre-tax) biweekly paycheck amount, Mr. Moore received as his gross pay for the pay period July 9, 2023 to July 22, 2023 approximately 60% of his normal gross (pre-tax) biweekly paycheck amount.

41. Upon information and belief, the approximately 60% represented 10% of his biweekly paycheck amount for his time and work associated with reporting to work and attending the meeting on July 10, 2023, and 50% of his normal gross (pre-tax) biweekly paycheck for work

[3] Defendants required certain employees to execute arbitration agreements, while other employees did not execute arbitration agreements. Plaintiff acknowledges that Defendants have asserted that Mr. Moore has an arbitration agreement with Defendants. However, because Defendants' policies complained of in this Complaint of not paying a full salary to "salaried" employees who did not work a full week (due to shutdowns initiated by Defendants) applied to all "salaried" employees without regard to whether or not the employee had an arbitration agreement, Mr. Moore's situation demonstrates both that Plaintiff's salary was not guaranteed and that other "salaried" employees who did not have arbitration agreements were similarly not employed on a salaried basis.

on the workweek of July 16, 2023 to July 22, 2023 (Mr. Moore returned to work on Monday, July 17, 2025).

42. Defendants' time records for Mr. Moore list Mr. Moore as "Idle Unpaid" for each day from July 11, 2023 through July 14, 2023.

43. Upon information and belief, other "salaried" employees similarly-situated to Plaintiff were, like Mr. Moore, paid less than their normal bi-weekly payment for the pay period of July 9, 2024 through July 22, 2023 because of Defendants' shutdown of the mine that week.

44. Further, other employees similarly-situated to Plaintiff had to, like Plaintiff, utilize vacation pay in order to combine with their reduced compensation for work performed in order to receive their normal bi-weekly payment.

45. Plaintiff and Mr. Moore, along with employees similarly-situated to Plaintiff, were ready, willing and able to work, but did not work on the "Idle Unpaid" days solely because Defendants decided not to operate the mine and to have Plaintiff, Mr. Moore, and other employees similarly-situated to Plaintiff not work for the remainder of that week (after reporting to work and attending the meeting on July 10, 2023).

46. There have been other events when, despite "salaried" employees working part of the workweek and being ready, willing and able to work the remainder of the workweek, Defendants reduced the employees' pay based on circumstances outside the employee's control.

47. For instance, on one occasion, the mine's tipple (a large structure with associated machinery and equipment that loads coal onto trains or trucks for transport) was not able to function and the company's stockpile was already full; if Defendants had mined coal, they would not have had anywhere to place the coal aboveground.

48. Defendants chose on that occasion not to pay the employees (including salaried employees) for several days, resulting in "salaried" employees not receiving their full salary, although they had worked part of the week and were ready, willing and able to work the full week.

49. On another occasion, Defendants were required to close for part of a workweek the coal mine because of a breached seal (an air barrier between underground portions of the mine); on this occasion, "salaried employees" worked part of the workweek but did not receive their full salary and did not receive their normal paycheck unless they had accrued paid time off and elected to use it for the shutdown.

50. Although some of the occasions when the mine was shut down were due to conditions that could have safety implications, the reduction of the "salaried" employees' pay was not imposed as a consequence of alleged violation of safety rules by the employees in question, but simply as part of Defendants' operational decisions to minimize expense associated with payment to employees during time periods when Defendants viewed the employees' working as not sufficiently beneficial to Defendants.

51. Upon information and belief, Defendants' payroll rules included that, if an employee worked in a workweek but did not work a full week due to a shutdown initiated by Defendants, and the employee did not have sufficient accrued paid time off, the employee would be paid less than the full normal gross pay amount for that workweek.

52. Further, upon information and belief, Defendants' payroll rules included that, if an employee worked in a workweek but did not work a full week due to a shutdown initiated by Defendants, and the employee had sufficient accrued paid time off to "cover" the time of the shutdown but indicated he or she did not want to use the paid time off to "cover" the time of the

shutdown, the employee would be paid less than the full normal gross pay amount for that workweek.

53. Upon information and belief, Defendant applies the same rules described above relating to reduction of salary to all of its employees paid on a "salaried" basis.

54. Therefore, all employees paid by Defendants on a "salaried" basis were not paid on a "salary basis" as that term is defined in 29 C.F.R. § 541.602, whether the employee in question ever had an occasion when his or her salary was in fact reduced as a result of Defendants' payroll rules or not, and whether in the event of such reduction the employee had sufficient accrued paid time off and elected to use such paid time off to cover the salary reduction (supplement the reduced salary to be able to receive the normal gross pay amount) or not.

55. Plaintiff and the similarly-situated employees performed work in both Kentucky and Virginia; Defendants' mines crossed the state lines and involved Plaintiff and similarly-situated employees working in both Kentucky and Virginia in the same day.

56. Defendant Wellmore Energy Company, LLC listed itself as Plaintiff's employer on Plaintiff's paystubs.

57. However, Defendants United Coal Company, LLC and Wellmore Coal Company, LLC also controlled Plaintiff's employment and were joint employers of Plaintiff with Defendant Wellmore Energy Company, LLC.

58. For example, attached to the initial Complaint in this matter as Exhibit 3 is a Facebook page of (and maintained by) Defendant United Coal Company, LLC, in which Defendant United Coal Company, LLC solicited employees to work in the Wellmore mine (pages 2, 6 and 28 of Exhibit 3), displayed a picture of a sign relating to safety posted at the Wellmore mine with the logo of its own parent company (Metinvest) with the statement "it's in our blood –

we breathe it, speak it, and work to achieve it day in and day out. Safety is no accident" (Page 15 of Exhibit 2), and stated, referring to pictures of Wellmore employees, "Here at #WellmoreCoal, we're family"( Page 25 of Exhibit 3).

59. Further, attached to the initial Complaint in this matter as Exhibit 4 is the "Career In UCC" section of the website of Defendant United Coal Company, LLC, in which it states that job applicants can apply for jobs with Wellmore Energy either by contacting United Coal Company, LLC directly, or by contacting Wellmore Energy.

60. Attached to the initial Complaint in this matter as Exhibit 5 is the "Management" page of Defendant United Coal Company, LLC, which notes that United Coal Company, LLC's Vice President and General Counsel "is the chief legal officer and serves as Vice President of all corporate subsidiaries" and further notes that United Coal Company, LLC's Vice President of Operations "is responsible for all day-to-day activities associated with safe, compliant and efficient production. This includes managing the production teams at all undergrounds mines…."

61. Indeed, not only did Defendants United Coal Company, LLC and Wellmore Coal Company, LLC control the employment of Plaintiff and the similarly-situated employees with their subsidiary, Wellmore Energy Company, LLC, but they were themselves controlled by their Ukraine-based parent company, Metinvest.

62. For example, attached to the initial Complaint in this matter as Exhibits 6 and 7 are the "Apply for Job" and "Feedback" sections of Defendant United Coal Company, LLC's website.

63. Upon information and belief, these webpages were drafted by the Ukraine-based parent company in a non-English language utilizing the Cyrillic alphabet and given to United Coal Company, LLC with instructions that United Coal Company, LLC use them, but never fully translated into English, further illustrating that Metinvest controlled United Coal Company, which

in turn controlled its subsidiaries, including Defendants Wellmore Coal Company, LLC and Wellmore Energy Company, LLC.

64. While Plaintiff has not sought to add the non-United-States-based Metinvest as a defendant at this time in order to expedite this litigation and avoid the procedural complications associated with pursuing claims against foreign entities, Plaintiff notes that Metinvest's control of the employment of employees of all subsidiaries through the intermediate parent/subsidiaries makes those intermediate parent/subsidiaries joint employers of the employees along with the employing subsidiaries.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

65. Plaintiff brings this action under the FLSA on behalf of himself and all similarly-situated current and former employees of Defendants who worked as purported salaried employees for Defendants and were not fully-paid for their overtime work which Defendants should have paid within the last three years.

66. Stated another way, Plaintiff seeks to bring this action as a collective action under the FLSA against Defendants on behalf of the following persons:

> all current and former employees of Wellmore Energy Company, LLC and/or Wellmore Coal Company, LLC who were paid on a purported salary basis, and, with respect to one or more weeks for which the regular payday fell on or after September 29, 2022, worked more than 40 hours in such week but was not paid overtime compensation due to such employee being erroneously classified by the employer as exempt under the executive exemption to the FLSA or another exemption requiring payment of the employee on a salary basis as defined in 29 C.F.R. § 541.602, but excluding employees who have an arbitration agreement with one or more of the Defendants.[4]

67. The employment policies, practices and agreements of Defendants raise questions of fact common to the proposed collective group including:

---

[4] Plaintiff anticipates filing a motion for notice to the proposed collective group, and reserves the right to amend and/or further clarify the group in such motion and otherwise hereafter in this action.

a. whether Defendant's pay policies made the weekly salaries of the members of the proposed collective group subject to deductions in weeks when employees performed some work but were instructed not to work on one or more days by Defendants, although the employees were ready, willing and able to work;

b. whether the conduct of Defendant was willful;

c. whether Plaintiff and members of the proposed collective group are entitled to lost wages, liquidated damages and the other relief requested.

68. The claims of Plaintiff are similar to those of the members of the proposed collective group, in that Plaintiff has been subject to the same conduct as members of the proposed collective group and Plaintiff's claims are based on the same legal theory as members of the collective group.

69. The Collective members are victims of Defendants' unlawful compensation practices and are similarly situated to Plaintiff in terms of job duties, pay and employment practices.

70. Defendants' failure to pay overtime compensation as required by the FLSA results from a generally applicable, systematic policy and practice and is not dependent on the personal circumstances of any individual employee. Thus, Plaintiff is similarly situated to the members of the Collective.

71. The similarly-situated employees are known to Defendants and are readily identifiable and may be located through Defendants' business records and the records of any payroll companies Defendant uses.

72. Plaintiff's FLSA claims are maintainable as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS RELATING TO DEFENDANTS' VIOLATION OF STATE LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23

73. Plaintiff brings this action under the Kentucky Wages and Hours Act (and, or in the alternative, under Virginia common law and/or the Virginia Overtime Wage Act) on behalf of himself and all similarly-situated current and former employees of Defendants who worked for Defendants and were not fully-paid for their work, including their overtime work for Defendant for which Defendant should have paid such employees since September 29, 2022.

74. Plaintiff brings Counts II and III of this lawsuit as a class action pursuant to Fed. R. Civ. P. 23, individually, and on behalf of himself and the following class:

> all current and former employees of Wellmore Energy Company, LLC and/or Wellmore Coal Company, LLC who were paid on a purported salary basis, and, with respect to one or more weeks for which the regular payday fell on or after September 29, 2022, worked more than 40 hours in such week but was not paid overtime compensation due to such employee being erroneously classified by the employer as exempt under the executive exemption to the FLSA or another exemption requiring payment of the employee on a salary basis as defined in 29 C.F.R. § 541.602, but excluding employees who have an arbitration agreement with one or more of the Defendants.[5]

75. Plaintiff is a member of the class he seeks to represent.

76. Defendant failed to pay Plaintiff and the members of the class he seeks to represent wages for work performed, as described herein, in violation of the KWHA.

77. Under the KWHA, employers are required to pay overtime compensation to non-exempt employees for overtime work performed by such employees.

78. As Plaintiff and the similarly-situated employees were non-exempt, Defendants' refusal to pay Plaintiff and Class Members overtime compensation for overtime hours worked violated the KWHA.

---

[5] Plaintiff anticipates filing a motion for class certification after discovery in this action, and reserves the right to amend and/or further clarify the group in such motion and otherwise hereafter in this action.

79. Upon information and belief, the Rule 23 Class is sufficiently numerous that joinder of all members is impractical, satisfying Fed. R. Civ. P. 23(a)(1).

80. All members of the Rule 23 Class share the same pivotal questions of law and fact, thereby satisfying Federal Rule of Civil Procedure 23(a)(2). Namely, all members of the Rule 23 Class share common questions, including whether Defendant's pay policies made the weekly salaries of the members of the proposed class subject to deductions in weeks when employees performed some work but were instructed not to work on one or more days by Defendants, although the employees were ready, willing and able to work.

81. Plaintiff's claims are typical of the claims of the Rule 23 Class, thus satisfying Fed. R. Civ. P. 23(a)(3) typicality. Defendants' failure to pay Plaintiff overtime compensation was not the result of any circumstances specific to the Plaintiff. Rather, it arose from Defendants' common pay policies of deducting from the salaries of employees in weeks where some work was performed but the Defendants instructed employees to not work on one or more days.

82. Plaintiff will fairly and adequately represent and protect the interests of the Rule 23 Class.

83. Plaintiff has retained competent counsel experienced in representing classes of employees in lawsuits against their employers alleging failure to pay statutorily required overtime compensation, thus satisfying Fed. R. Civ. P. 23(a)(4).

84. By failing to pay Plaintiff and Class Members for all hours worked, and failing to pay employees the full amount of overtime compensation earned, Defendant has created the circumstance under which questions of law and fact common to the Rule 23 Class members predominate over any questions affecting only individual members. Thus, a class action is superior to other available methods for fair and efficient adjudication of this matter. Accordingly, Plaintiff

should be permitted to pursue the claims alleged herein as a class action, pursuant to Fed. R. Civ. P. 23(b)(3).

## COUNT I

## VIOLATION OF FLSA
## NONPAYMENT OF OVERTIME COMPENSATION

85. Plaintiff incorporates by reference all preceding paragraphs as if the same were set forth again fully at this point.

86. Defendants are subject to the wage requirements of the FLSA because Defendants are each an "employer" under 29 U.S.C. § 203(d).

87. During all relevant times, the members of FLSA Collective, including Plaintiff, were covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

88. The FLSA requires that every covered employee be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular rate at which he is employed. See 29 U.S.C. § 207(a)(1).

89. Defendants are not exempt from the requirements of the FLSA with respect to the employment of Plaintiff and the FLSA Collective.

90. Plaintiff and the FLSA Collective are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

91. Defendants knowingly failed to compensate Plaintiff and the FLSA Collective at a rate of one and one-half (1½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

92. Defendants willfully violated the FLSA by engaging in a pattern or practice (or patterns or practices) of classifying employees as exempt and therefore not paying overtime compensation for overtime work performed, and doing so in reliance upon an exemption requiring the employee to be paid on a salary basis, but not in fact paying the employee on a salary basis.

93. Pursuant to 29 U.S.C. § 216(b), employers, such as Defendants, who fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for the unpaid minimum and overtime wages, an additional equal amount as liquidated damages, reasonable attorney's fees, and costs of the action.

**COUNT II**

**VIOLATION OF KY. REV. STAT. ANN. §§ 337.275, *ET SEQ*.**
**BY NONPAYMENT OF WAGES.**

94. All previous paragraphs are incorporated as though fully set forth herein.

95. Plaintiff brings this claim on behalf of all members of the proposed Rule 23 Class.

96. Kentucky state law requires that covered employees be compensated for every hour worked in a workweek. *See* KY. REV. STAT. ANN. §§ 337.275, *et seq*.

97. KY. REV. STAT. ANN. § 337.285 requires that employees receive overtime compensation "not less than one and one-half (1-1/2) times" the employee's regular rate of pay for all hours worked over forty in one workweek. *See also* 803 Ky. Admin. Regs. 1:060.

98. During all times material to this complaint, Defendant was a covered employer required to comply with KY. REV. STAT. ANN. § 337.010(1)(d).

99. During all times material to this complaint Plaintiff and the Rule 23 Class were covered employees entitled to the protections of the KWHA. *See* KY. REV. STAT. ANN. § 337.010(1)(e).

100. Defendants are not exempt from providing Plaintiff and Class Members the KWHA's overtime benefits because the employees do not fall within any of the exemptions set forth therein. *See* KY. REV. STAT. ANN. § 337.285(2).

101. Defendants have violated the KWHA with respect to Plaintiff and the Rule 23 Class by, *inter alia*, failing to compensate them for all hours worked in excess of forty per workweek at one and one-half their "regular rate" of pay.

102. In violating the KWHA, Defendants acted willfully and with reckless disregard of clearly applicable provisions of the KWHA.

103. Pursuant to KY. REV. STAT. ANN. § 337.385, Defendants, because they failed to pay employees the required amount of wages and overtime at the statutory rate, should be found liable to the employees not only for the unpaid wages, but also for liquidated damages in an amount equal to the amount of unpaid wages.

104. Pursuant to KY. REV. STAT. ANN. § 337.385, Plaintiff and Class Members are entitled to reimbursement of the litigation costs and attorney's fees expended if they are successful in prosecuting an action for unpaid wages.

**COUNT III**

**VIOLATION OF VIRGINIA OVERTIME ACT BY NONPAYMENT OF OVERTIME**

105. Plaintiff re-allege and incorporate by reference all allegations in all preceding paragraphs.

106. Defendants' failure to pay overtime compensation to Plaintiff and the similarly-situated employees for the overtime work of Plaintiff and the similarly-situated employees violated the Virginia Overtime Wage Act, Va. Code § 40.1-29 *et seq.*

107. Plaintiff seeks on behalf of himself and all similarly-situated employees all relief available under the Virginia Overtime Wage Act, including unpaid overtime compensation, liquidated damages, and attorney's fees and other expenses of this litigation.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that the Court:

A. Issue process and bring Defendant before the Court;

B. Authorize notice to issue to members of the proposed collective action and permitting similarly-situated persons a reasonable opportunity to join this litigation with respect to claims under the FLSA;

C. Certify a class of similarly-situated employees whose rights were violated by Defendant under state law, and grant relief available under applicable state law, including unpaid wages, liquidated damages, and attorney's fees and other litigation expenses, to the class;

D. Empanel a jury for the trial of all issues of fact;

E. Enter a judgment awarding Plaintiff and the Classes damages in the amount of the unpaid overtime compensation, plus liquidated damages in a like amount, in amounts to be proven at trial;

F. Award Plaintiff, the Classes and similarly-situated persons joining this litigation all costs of litigation, including expert fees and attorneys' fees;

G. Grant Plaintiff, the Classes and similarly-situated persons joining this litigation such other further and/or general, legal and/or equitable relief to which they are entitled or which the Court otherwise deems appropriate.

Respectfully submitted,

/s/ Alexis I. Tahinci
Alexis I. Tahinci
VSB No. 85996
Tahinci Law Firm, PLLC
105 Ford Avenue, Suite 3
Kingsport, TN 37663
(423) 406-1151
alexis@tahincilaw.com

Mark N. Foster
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
Mfoster@MarkNFoster.com
(motion for *pro hac vice* admission forthcoming)

John R. Kleinschmidt, III
The Law Office of John R. Kleinschmidt III, PLLC
P.O. Box 1746
Lexington, KY 40588
(859) 866-3097
John@EmploymentLawKY.com
(motion for *pro hac vice* admission forthcoming)

*Counsel for Plaintiff*